The next case for oral argument this morning is Murphy v. Roundy's, Appeal No. 25-1741. Good morning. Good morning, Your Honors. Attorney Shannon McDonald on behalf of Plaintiff Appellant. May it please the Court. Your Honors, this is an ADA FMLA case. The Plaintiff Appellant, Miranda Murphy, was employed with Roundy's company from March of 2020 through July of 2022. She was a driver, a truck driver, full-time at all times throughout her employment. She suffered from various mental disabilities, including PTSD, anxiety, depression, and ADHD. Ms. Murphy takes medication, always has taken medication for mental disabilities. At one point during her employment, she consulted with her manager, Daryl Grant, concerning her disabilities and her need for some type of accommodation. At that point, and it was in the fall of 2021, Ms. Murphy recommended or asked for potentially becoming a regular driver instead of a spotter, possibly a change in her job duties or her schedule as possible accommodations. Nothing happened following that meeting. She met with a new manager in April or May of 2022, and that was Mr. Sadewitz. Similar conversation with Mr. Sadewitz, where she explained, I have mental disabilities. She referenced those disabilities, indicating that she could use an accommodation to help with her job. There was then a change in her medication in June of 2022, which resulted in another meeting with Mr. Sadewitz in June of 2022. That change in medication affected her ability to sleep, and so she was groggy in the morning. And so when she met with Mr. Sadewitz in June of 2022, she explained this to him and asked if there was some type of accommodation, such as possibly a later start time or, again, a change in her schedule. At all times when she would bring these matters to the manager's attention, they would refer her to the HR department. They didn't engage her and speak with her about her disabilities or ask any questions about that or her job duties and what might help her. Instead, they just referred her to HR. When she gets to HR, and I know that you have some disagreement with Roundy's about the nature of her request, but assume we believe the facts and the records show that she requested an FMLA accommodation from HR. Is it your request, is it your contention that we should construe her request for FMLA leave as a request for an ADA accommodation? Yes, I think you can. And what's the authority for that? Sure, and I think that falls under Bultmeier and Beck. Both cases involve individuals with mental disabilities, and especially in Bultmeier, the court went and explained how an employer, they need to be more proactive in the interactive process. And they say that employees aren't expected to know the magical words that I need an accommodation, especially when the employer is already on notice that the employee suffers from mental disabilities. In those particular circumstances, the employer has to go a step further. And so then a request for FMLA leave certainly can be seen as a request for some type of accommodation that would then trigger the interactive process. Is there any risk there from your perspective as a counsel for Ms. Murphy? Ms. Murphy goes to HR and says, I'd like FMLA leave. Let's assume we think the record shows that, and that's all she says. And then HR comes back and says, have you thought about a change in schedule? Have you thought about shifting down to yard spotter duties only or driver duties only and not also yard spotter duties? Have you thought about this? Have you thought about that? Is there a risk that to Ms. Murphy, it's as if the employer is actually pushing her away from FMLA leave or not a risk at all? I don't believe there's any risk at all. And again, I believe that an employer here around you should have gone that extra step because they were aware of her mental disabilities. Again, depression, anxiety, ADHD, PTSD. They knew she suffered from these things. And so I think they should have gone the extra step. And I don't think it would have chilled her rights under FMLA or anything of the sort. They had an obligation to sit down and actually have that conversation. I think that's why the court in Boltmeier and Beck are so persuasive here because they use that exact language where when you have an individual such as Ms. Murphy with mental disabilities and she's expressing to you that there is some type of issue going on with her disabilities and she needs some type of accommodation, you have to then sit down and speak with the person. Again, Boltmeier and Beck say that specifically. Because if we assume that she asked for FMLA leave and there was an interaction and she filed with MetLife, is your contention that during that meeting that I know HR disputes that it happened, but at that meeting HR should have discussed other accommodations even though she was asking for FMLA leave? Yes. And I think the record isn't abundantly clear on what exactly she said during that meeting. And Ms. Murphy certainly admitted that it was a while before. She doesn't remember exactly what was said, but that she does know that she brought up her medical conditions in her request for FMLA leave. So I would say yes. During that meeting especially, it should have been brought up or at least a discussion about what is going on here. What do we need to do or what's going on with you? How can we help you? And I think that's what Boltmeier and Beck both point to is when an employee like this with mental issues comes to the company seeking something, some type of accommodation or leave, there is an additional obligation on the company not to just take everything at its word, FMLA, which she was told to do by the managers of the company as well. The plaintiff in Boltmeier didn't quite ask the specificity that the record suggests here that Ms. Murphy asked, and that is something that Roundy's brings up. So can you address that because you've asked us to look at that case, but it may be that they're not really similar plaintiffs in that regard. No, and I think it actually makes it even stronger in this case because in Boltmeier, the employee just simply said he wasn't equal to the task and then didn't show up for a physical, and the employer then terminated that employee based upon those two items. And here, at least, we have Murphy who has made the initiative to speak about her mental disabilities and request for accommodation and then going to HR to request some type of leave for an accommodation. So I think it's even stronger in this case. the mental health conditions interfered with the ability to ask for certain things, and I don't see any evidence here. So are you asking us to hold that any time an employee says that she has mental health obligations and asks for FMLA leave, that there's an obligation on the employer to say, well, hey, what about these accommodations? I do believe that there should be more of an affirmative obligation on the company to at least delve into what is going on. Any time that an employee just says I have mental health issues, that should be sufficient to trigger it. I believe if there's an affirmative assertion that there are mental health issues and that employee is at the same time seeking some type of leave or accommodation, there should be a more robust discussion concerning what those disabilities are, what are the job duties, and how can we help. And maybe FMLA is the answer for that particular case, but as this Court has made clear, a lot of times it's not because a lot of times they're putting these employees on FMLA where it's an excuse to not work as opposed to an accommodation so that employee can continue to work. So going back to the initial question from Your Honor regarding Bultmeier, again, I believe this case is even stronger in that, especially with Bultmeier, the doctor submitted a letter after the termination already occurred. Here we have Murphy who's already expressed during her employment several times to managers and HR that she's suffering from these medical conditions. What's the evidence that she told HR that several times? There's not, and maybe I misspoke. I know she told some supervisors before, but I didn't see any evidence that she raised that with HR. You are correct. There's one conversation with HR, and that was June of 2022 with Ms. Robinson. The other conversations I was referring to were the conversations with Mr. Sajewicz and Mr. Grant. Who told her to go to HR? Who told her to go to HR. Again, no interactive process with them. It was just go to HR. And with respect, again, to Bultmeier submitting a doctor's letter after the fact, the Court there said, okay, so then when you get that information after the fact, that was a perfect time for you to then maybe come back and review this situation. The same thing happened here where after the fact Ms. Murphy communicates because then she was ultimately approved for FMLA leave. So when does the ADA accommodations process end? Because it does seem that you're suggesting on Bultmeier and on the facts here that even after they fired her, two weeks later, Roundy's had an obligation to pick up or resume the iterative process. Sure. When does it end? And I think there would have to be some type of close temporal proximity to when that happens. In Bultmeier, it was the same day. Here we're talking about a couple weeks where the additional information comes through. And I would also say, and this goes to our other arguments on the other points as well, with MetLife being the third-party administrator contractually with Roundy's, they're using MetLife as a sword and a shield. So I would say any time MetLife is receiving this information from Ms. Murphy, really it's Roundy's receiving that information at the same time. But to straightforwardly answer your question, there would have to be a temporal proximity, a close one. Six months down the road, new information comes in, that might be too long. But here with just a couple of weeks that go by, again, going back to Bultmeier, they say, and Beck, all you had to do was sit down with the employee. And they specifically state, this would have been the proper way to engage in the interactive process. And that was the court in Bultmeier speaking to receiving information after the fact, but revisiting it because this new information came to light. And so for those reasons, under the interactive process, our position is the district court erred. It determined that Ms. Murphy caused the breakdown in the interactive process. And I believe with the evidence and the facts that have been presented, there is overwhelming evidence showing that she was driving the interactive process. The only thing Roundy's said in response was, go on FMLA. You're into your rebuttal time. If you want to save. I'm sorry. Yes. It's up to you. I will save the remainder. Thank you, Your Honor. Okay. Ms. Pfeiffer? Good morning. Good morning. Your Honor, may it please the court, my name is Sally Pfeiffer, and I represent the appellee, Roundy's Incorporated, with respect to this appeal. It is our position that the district court properly granted summary judgment on all of Ms. Murphy's claims, her two ADA claims and her two FML claims. And we believe that the court should affirm the dismissal of those claims. The first claim that Ms. Murphy brings is a breakdown in the interactive process with respect to the Americans with Disabilities Act. First, I want to make it clear that there is no independent cause of action for failing to engage in the interactive process. And both the employer and the employee are responsible for interacting together within that process. And in the Railing case, I'm sorry, in the Igesaki case, this court said liability can only arise when the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual. I have a similar question for you that I asked Mr. McDonald about when the interactive process ends, because Mr. McDonald makes the point, sure, Roundy's fired her, but its third-party contractor was still processing her FMLA. Of course, she turned it in late, and that's why. And that comes to light, that they finished it now. They've done this retroactive decision. Her leave has been approved retroactively. Why should we hold that under those circumstances, Roundy's can act like when it's their own third-party processor? The process should end, and they should not consider this new information, which is close in time. It's not the same day as in Volkmeier, but it is just two weeks later. Well, I think the distinguishing factor in this case is that Ms. Murphy was given the opportunity to provide medical certification to support her FMLA. She knew, she testified in her deposition, she knew she had 15 days to supply the employer with that certification. She failed to do so. She then received a letter on July 6th from Roundy's, I'm sorry, from MetLife, telling her that her FMLA had been denied, and any further leave after that point was not going to be protected. Despite receiving those communications, she was absent on several additional days. While she called in, I admit that she called in to report her absences, she never indicated what those absences are for. Why then does Roundy's not call MetLife and say, hey, we fired this employee, do nothing further? And I think that's an issue that's not in the record. If you're asking my opinion, I think it's sometimes, right, HR people get involved with the day-to-day on what's going on within the plant, and there isn't that communication with MetLife. I don't know what the reason is in this particular case. It's not in the record, but that would have been an issue for Mr. McDonald to have appropriately discovered during the course of discovery. So I think that's the difference here. If you allow an employer, if you take the position that the accommodation process is ongoing, there's no end. There's no reasonable end. And Judge Posner said that in connection with the Townsend case that really relates, I guess, more to the FMLA claims that are present. But the same analysis, in my opinion, applies. Employers make decisions, and you can't allow those decisions to always be retroactively made. And I think the Bultmeier decision is factually different than what was present in this case. This counsel, should plaintiff have pled failure to hire or rehire under the ADA? She didn't apply for rehire, so I think that would not have been… Yeah, but would that have been a solution? Because we're wondering where you end on the failure to accommodate. Is the answer she should have brought a failure to hire or rehire? Well, she brought a failure. She brought a termination claim, right? So her termination claim is that she was terminated because of her disability. And we know that in the Seventh Circuit, you have to prove but for analysis. And there's no evidence that her employment was terminated because she was disabled. Her employment was terminated because she failed to supply the medical certification that was requested by MetLife. She was notified on July 6th that any further absences were not going to be covered by FMLA and were not going to be authorized, and yet she continued to take leave. She could have, for example, called in and said, hey, I'm working on it. I'm struggling. I'm trying to get this med certification, and my doctor can't respond. But she didn't provide that information. My counsel across the aisle indicates that Ms. Murphy was in constant contact or continuous contact with MetLife. That allegation is not supported anywhere in the record. The contact between Ms. Murphy and MetLife is MetLife sending communications to Ms. Murphy. There's no evidence either in her deposition or in any post-deposition affidavit saying that she was in contact and this is the information she was relaying to MetLife so that MetLife knew. So MetLife made a decision based on the information it had. The company made a decision based on the information that it had. And unfortunately, this is one of those situations where there was no communication between the two. But the issue, again, is was Ms. Murphy terminated because of her disability? And it's our position that there's no evidence to support that. There's no pretext. The company did not lie about its decision. There's no evidence that it treated other individuals more favorably who had requested FMLA, for example. And the accommodation process has to have some stopping in. Did all requests for FMLA leave have to go through MetLife? Is there any evidence otherwise? Yes. All communications about FMLA were directed through MetLife. And is there any evidence about why Ms. Murphy waited until roughly three days before the deadline to send the form to the doctor? I didn't see anything, but you know the case better. Yeah. No, there's no evidence in the record that would explain why she failed to provide that certification form to her doctor until three days before the deadline. You started to talk about pretext. I want to back up there. Ms. Murphy is drawing our attention to her conversations with Sajewicz as her supervisor and says, hey, I told him I had these disabilities. And I'm gleaning that your position is his testimony is irrelevant for the pretext determining whether their reason for firing her is pretextual because he didn't play a role in the decision to terminate Murphy. But if we are to draw all reasonable inferences in Murphy's favor, why couldn't we conclude that he at least nominally participated in the decision to terminate her since he signed the termination letter? Because the issue is, and this is in the, I'm going to not pronounce it correctly, Kravny versus Limograin Genetics Corporation. So in that case, this court said that a supervisor's alleged inconsistent statement cannot create an inference of pretext where there is nothing in the record to suggest that the supervisor participated in the decision to terminate. In my opinion, that's a, I'm actively participating in the decision. I'm having a discussion with HR about whether this person should be terminated. Sort of like that cat's paw analysis. Here he simply signed the letter and sent the letter to Ms. Murphy. That's not really participating in the decision to terminate. We don't have a fact issue on that? Pardon me? There's no fact issue there where he signed it. We have a letter he signed. Roundy says, oh, he signed it, but it doesn't mean he was involved. And Ms. Murphy's saying, he signed my letter. Right, but she doesn't provide any additional evidence to support the conclusion that he was actively a participant in the decision-making process, not in the communication process. I guess that's where I draw the distinction, right? There's the decision-making process, and then there's the communication process. That's why I asked about reasonable inferences, which we already draw in Ms. Murphy's favor. And respectfully, I disagree that there's a factual inference there that would allow the court to find that there was potentially some pretext. There's nothing else in the record that would support that, and the district court disagreed with that analysis that was made by Ms. Murphy before the district court. I do want to touch briefly on the FMLA. I know that counsel didn't address that. The only issue that Ms. Murphy presents on appeal with respect to her FMLA claim is this doctrine of equitable tolling. And there are really only two Seventh Circuit decisions that have previously addressed equitable tolling. Both of us have cited those cases. The first is the Rodney case, I believe. And I want to point out that the law requires an employee to engage in some active process. There has to be some indication that she had a duty of diligence, that she diligently was trying to get that medical certification prepared and completed on time. That's, in my opinion, that's the distinction in the Townsend case. And here, the evidence is clear. Ms. Murphy was given the medical certification. She understood what the consequences were of not providing that medical certification within the 15-day time period. She testified that she knew that, yet she didn't provide, and as Judge St. Eve recognized, there's no evidence in the record that Ms. Murphy had any explanation for why she didn't give that certification form to her health care provider before the three days before the deadline. Counsel, she had put in a declaration at summary judgment saying, I was depressed. I was laid up in bed. I was having adverse reactions to my new meds. I couldn't get to this on time. In your view, would that be enough? I think it would be. I think the FMLA provides that, again, there has to be some evidence of due diligence on the part of the employee. Unfortunately, this record doesn't have any of that evidence in the record. So without that, there's no evidence that what she did was diligent. Is there any evidence as to whether MetLife would grant extensions on that form if requested? I don't know the answer to that question. But all of the communications from MetLife did indicate that if she failed to provide that medical certification, that her leave could be either denied or delayed. Again, she was required to provide that certification by June 30th. By July 6th, she still had not provided that med cert. And then she received another communication from MetLife specifically telling her that because she had not provided the medical certification, that her request for her leave had been denied. Again, to your point, Judge, I think she could have contacted if she was in the process. She could have contacted MetLife and said, I'm in the process of trying to get this information to you. But she didn't provide that information to MetLife. She didn't provide it to Roundy's. She just simply did nothing, unfortunately, and continued to take leave, which wasn't protected under the FMLA and wasn't protected under the ADA and wasn't protected under Roundy's policies. And that's the reason that her employment was terminated. I do want to address quickly just a comment made by counsel regarding a question about whether if there was a request for FMLA, should Roundy's have asked about other forms of accommodation? And I think the answer to that question is no, because if Roundy's tries to dissuade Ms. Murphy from taking FMLA, that can look like FMLA interference or FMLA retaliation. Most employers will provide FMLA to an employee when they request it. And there's limited information that an employer can require when an employee utters the words FMLA, which is what Ms. Murphy did here. So the appropriate response is what Roundy's did. It provided her with the contact information for MetLife and said, this is how you apply for FMLA. She had previously applied for FMLA. She knew what the process was. I take Mr. McDonald's point to be, it doesn't have to be that the employer dissuades the employee from seeking FMLA leave, but also opens the conversation up to other accommodations that might be warranted based on whatever the employee is talking about. And I think that runs the risk for an employer of an interference claim by trying to discuss something other than leave. My understanding of the FMLA is once the employee has requested leave, you give them the paperwork and let them go through the process. If ultimately their leave is not necessary, then you can potentially discuss other forms of accommodation. Thank you for your time. Thank you, Ms. Piper. Mr. McDonald, you have a bit of time for rebuttal. Thank you again, Your Honors. I first wanted to address the last thing that was discussed, and that was the question of should an employer ask about other accommodations if an employee asks for FMLA. And it's certainly consistent. You can do both at the same time. Just because an employer starts talking about potential accommodations or other ways in which the employee could remain employed doesn't give any or present any chilling effect on the FMLA. All the employer has to do is provide the forms for FMLA, then it's on the employee whether they want to apply for it or not, while still taking the humanistic approach and doing what they really should do and see, is there something that we can do to help you as the employee continue to perform your job? Secondly, I wanted to address the issue of pretext here. And as Your Honors pointed out, Mr. Stajewicz did sign the letter. He denies signing the letter, which is odd. But Mr. Stajewicz and Mr. Grant, they're incredible witnesses to begin with, so further lending support to pretext is the fact that especially Mr. Stajewicz denies even having these conversations with Ms. Murphy regarding disabilities and accommodations. Now he's denying having any involvement in the termination process, I think, certainly supports an inference that he did in fact have some type of participation in that termination process. Thirdly, what I wanted to address is the position that Ms. Murphy did not contact Roundy's while her FMLA application was being processed and asked for an extension or to provide them with any more information. As pointed out in our brief, and as indicated in the record, Roundy's directed Ms. Murphy to run all communications through MetLife. Is there any evidence that she asked MetLife for an extension? There's no evidence that she asked for an extension, but there is evidence that she received an extension, in that MetLife, after receiving additional documentation, then approved her application on August 2nd. So although there may not be an email or a telephone call that specifically noted wherein Ms. Murphy asked for an extension, there was an extension that was granted. And as Roundy's admits, Roundy's did not contact MetLife and say, stop the process, she's fired, she's no longer with us. It let MetLife do their thing, so to speak. And what MetLife decided, based upon all of the information submitted by Ms. Murphy, was that she was entitled to leave under the FMLA, and it covered all those absences for which she was terminated. In particular, the July 11th, 15th, and 16th, where Roundy's contends she was absent without approval. Another issue that we have with that reason for termination, that she was absent without approval, is, as admitted by Roundy's, she continued to call in every day as required by the employee handbook. Her supervisor, Sajewicz, was getting emails every day that she called in saying she's not going to be into work today. She's called in. They don't have to give a specific reason for that. It's just noted in the system so they were aware of it. I'm out of time. Thank you very much. I have a question on FMLA leave. May I? Yeah, of course. Please. Did you seek discovery on the timing of terminations for not getting your leave approved? Because this did, Roundy's did act with quite, it was quite speedy. Did you seek any evidence of how this typically goes down in terms of timing? When someone has, yes, when someone has applied, you know, they don't, they're not approved. I understand your question. No, we didn't seek discovery on that particular issue. Okay, thank you. Thank you. Thanks to both counsel. The court will take the case under advisement.